UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SUROWIEC,

        Plaintiff,

v.

CAPITAL TITLE AGENCY, INC.,

        Defendant.

_____/

Case No. 08-13543

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE, AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**I.      INTRODUCTION**

Before the Court is Defendant Capital Title Agency, Inc.'s ("Capital") Motion to Dismiss for Lack of Jurisdiction, for Improper Venue, or in the alternative, for Transfer of Venue, and for Failure to State a Claim upon which Relief can be Granted.  (Doc. 3). For the reasons discussed below and during the March 20, 2009, hearing on the motion, the Court grants the motion on the ground that the Court lacks personal jurisdiction over Capital.

**II.     STATEMENT OF FACTS**

Surowiec, a resident of Royal Oak, Michigan, declared the following in an affidavit.  In August 2006, he entered into an agreement to purchase real estate ("the

Property") in Phoenix, Arizona. Around September 7, 2006, Surowiec was informed, via a letter mailed to his home, that Capital had been retained as the settlement agent for the closing. Included in the letter were various forms that Surowiec signed and returned. Around November 13, 2006, Capital forwarded various closing documents to Surowiec at his home and requested that he sign and return them, which he did. Surowiec purchased the Property for $137,000, and used two mortgages to borrow virtually all of the money he used to pay for the Property. During closing, Surowiec paid roughly two-thirds of Capital's fees. Surowiec states that he never traveled to Arizona to sign any of the purchase documents. He also says that Capital never informed him that there were any encumbrances on the Property which would not be paid off at closing. In addition, he states that he received a title policy from Capital in February 2007, which made no reference to any of the liens on the Property.

Surowiec learned that there were liens on the Property in May 2007, when he received an email from the owner of Shamrock Glen, the previous owner of the Property, advising him that there were numerous liens that fully encumbered the Property. Surowiec subsequently learned that there are liens on the Property totaling approximately $2,690,000. He contends that these liens have prevented him from selling the Property, which he bought as an investment. He also claims that, even if he could sell the Property, it would be worth less than $50,000. In addition, he has been paying over $1,000/month toward the mortgage and the homeowner's dues. Surowiec also has not been able to rent the Property. Although he had a tenant, the tenant vacated the Property and refused to pay rent when a foreclosure notice was posted on the premises.

Lawrence Phelps, general counsel for Capital, stated the following in an affidavit. Shamrock Glen contacted Capital about acting as the escrow agent for the sale of the Property to Surowiec. The closing of the sale took place on November 20, 2006, in Maricopa County, Arizona. At the closing, Surowiec signed all typical closing documents. Capital's sole involvement with Michigan was the mailing of two pieces of correspondence to Surowiec.

It appears that Surowiec is involved in an Arizona lawsuit seeking to quiet title in the Property.

### III.   STANDARD OF REVIEW

A motion to dismiss for lack of personal jurisdiction leaves the Court with three options: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id. Regardless of how the court proceeds, the plaintiff always bears the burden of establishing that jurisdiction exists. Id.

### IV.   ANALYSIS

If the Court lacks personal jurisdiction over Capital, this case must be dismissed. In order to resolve this issue, the Court must first address an apparent factual dispute.

Surowiec declared that Capital mailed the purchase documents to him in Michigan, where he signed them. Capital, on the other hand, has indicated that Surowiec signed the documents in Arizona. Because the Court is deciding this issue without conducting an evidentiary hearing, it will not consider any facts proffered by Capital that conflict with those offered by Surowiec. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). Accordingly, for the purposes of this motion, the Court accepts Surowiec's claim that he signed the relevant purchase documents in Michigan. Therefore, the relevant issue is whether Capital's acts of calling Surowiec in Michigan and mailing two sets of documents, including the closing documents, to him in Michigan constituted sufficient contacts to give this Court specific personal jurisdiction over Capital.

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (alteration omitted) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A court sitting in diversity will only have personal jurisdiction over a defendant if the law of the forum state authorizes jurisdiction and the exercise of jurisdiction comports with due process. Id. at 550. In this case, the Court finds that it does not have personal jurisdiction over Capital because, even assuming that the exercise of jurisdiction is authorized by Michigan's long-arm statue, it would not comport with due process. See id.

The Due Process Clause permits the exercise of both general and specific personal jurisdiction. City of Monroe Employees Retirement Sys. v. Bridgestone Corp.,

4

399 F.3d 651, 665 (6th Cir. 2005). The Plaintiff concedes that the Court does not have general personal jurisdiction over Capital. (See doc. 5 at 9). Specific jurisdiction exists if the following three-part test is satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

"Th[e] purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and quotations omitted). Accordingly, this requirement ensures that the defendant's contacts with the forum state "are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Sixth Circuit has stated that the mere existence of a contract between the defendant and a citizen of the forum state is insufficient to confer specific personal jurisdiction. Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000). But, where a defendant creates a "substantial connection" with the forum state, jurisdiction is proper. Burger King Corp., 471 U.S. at 475 (citing McGee v. Int'l Life Insurance Co., 355 U.S. 220, 223 (1957)).

In Calphalon, the Sixth Circuit addressed a case involving a Minnesota-based corporation that had served as Ohio-based Calphalon's exclusive manufacturing representative for the states of Minnesota, Iowa, North Dakota, South Dakota, and

Nebraska.  Calphalon, 228 F.3d at 720.  During the course of their relationship, the Minnesota-based, defendant corporation corresponded with Calphalon via telephone, fax, mail, and two physical visits.  Id.  Calphalon subsequently filed a suit in Ohio district court relating to the parties' relationship.  Id. at 721.

The district court granted the defendant's motion to dismiss based on a lack of personal jurisdiction, and the Sixth Circuit affirmed.  Id. at 721, 724.  The Sixth Circuit found that the actual course of dealings between the parties demonstrated that the defendant's contacts with Ohio were purely fortuitous and attenuated because the defendant's performance of the agreement was not focused on exploiting the Ohio market.  Id. at 722-23.  Furthermore, the defendant's contacts, which resulted solely from Calphalon's presence in Ohio, "were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction."  Id. at 723.

In LAK, Inc. v. Deer Creek Enterprises ("LAK"), the Sixth Circuit addressed a case involving an Indiana partnership that received an unsolicited inquiry, via its agent in Florida, from a Michigan corporation interested in purchasing property the Indiana partnership owned in Florida.  885 F.2d 1293, 1294 (6th Cir. 1989).  Further negotiations involved telephone calls and the mailing of several drafts of the purchase agreement between Indiana and Michigan; but, the defendant never traveled to Michigan.  Id. at 1294-95.  The parties separately signed a final draft of the purchase agreement in Michigan and Indiana respectively.  Id. at 1295.  The Michigan corporation subsequently sued the Indiana partnership in Michigan for allegedly breaching the purchase agreement.  Id. at 1297.

The Sixth Circuit found that the defendant had not purposefully availed itself of the privilege of conducting business in Michigan. Id. at 1303-04. The Court noted that the defendant did not solicit business in Michigan. Id. at 1300. In addition, the Court noted that the telephone calls and letters were "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the Burger King Court rejected as a basis for haling non-resident defendants into federal jurisdictions." Id. at 1301. The Court stated that although some injury might be said to occur in Michigan because that was the plaintiff's domicile, "the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state." Id. at 1303 (quotation and alteration omitted). Accordingly, the Court concluded, "There has been no showing that the object of [the defendant's] contacts with Michigan was to have 'ongoing,' or 'far-reaching,' or 'continuous,' or 'substantial' consequences in the Michigan real estate market, thereby affording jurisdiction to the Michigan courts." Id.

Like the defendants in Calphalon and LAK, Capital has not purposefully availed itself of the privilege of doing business in the forum state. Capital's involvement in the sale of the Property began when Shamrock Glen asked Capital to act as the escrow agent for the sale of the Property to Surowiec. There is no evidence that Capital solicited this business from Shamrock Glen (or Surowiec) in order to benefit from Surowiec's Michigan domicile. Capital's only connections to Michigan were that it contacted Surowiec at his home in Michigan by phone and mail. The only reason Capital had any contact with Michigan was because that was where Surowiec was located when Capital needed to contact him. Capital would have had exactly the same contact with any jurisdiction where Surowiec happened to be during the relevant time

7

frame. Such contacts "are the type of 'random,' 'fortuitous,' and 'attenuated' contacts" that do not constitute purposeful availment. Calphalon, 228 F.3d at 723. Furthermore, Capital's performance of its duties as the escrow agent for the sale centered around the Arizona real estate market, and the alleged damage to Surowiec involves the fact that he did not get clear title to the Arizona property. See LAK, 885 F.2d at 1303-04.

Plaintiff cites Lanier v. American Bd. of Endodontics, a case involving a Michigan dentist plaintiff who sued when her attempts to obtain certification from the American Board of Endodontics failed. 843 F.2d 901, 903-04 (6th Cir. 1988). The defendant was located in Illinois and only contacted Michigan in order to correspond with the plaintiff regarding her application for certification. Id. at 903. The Sixth Circuit noted that, for the defendant, the object of the business transaction included "extend[ing] its influence and prestige in Michigan as the principal national determiner of special competence for the practice of endodontics." Id. at 911. Accordingly, the court went on to hold that due process allowed Michigan to exercise jurisdiction over the defendant because "the real object of the [defendant's] contacts with Michigan is to have ongoing, far-reaching consequences in the Michigan dental services market. These consequences are continuous and substantial, affording jurisdiction." Id. Plaintiff's reliance on Lanier is unpersuasive because the object of Capital's contacts with Surowiec was not to "have ongoing, far-reaching consequences" in a Michigan market. See id.

Therefore, the Court finds that Capital did not purposefully avail itself of the privilege of doing business in Michigan or causing consequences in Michigan. Thus, this Court does not have specific personal jurisdiction over Capital. See Mohasco Indus., Inc., 401 F.2d at 381.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction, for Improper Venue, or in the alternative, for Transfer of Venue, and for Failure to State a Claim upon which Relief can be Granted, (Doc. 3), is **GRANTED** on the ground that the Court lacks personal jurisdiction over the defendant.

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE


DATED: March 30, 2009


## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                              s/Bernadette M. Thebolt
                                              DEPUTY CLERK